IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
PADUCAH

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF SMITHLAND TOWING & CONSTRUCTION, LLC, AS TITLE OWNER, AND WRBM, LCC D/B/A WESTERN RIVERS BOAT MANAGEMENT, INC. AS OPERATOR AND OWNER PRO HAC VICE OF THE WILLIAM E. STRAIT, OFFICIAL NO. 270550, FOR EXONERATION FROM OR LIMITATION OF LIABILITY | Case No. 5:18-cv-00113 (TBR) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Alice Stewart's Motion to Lift Stay, (Mot. to Lift Stay), Dkt. 176. Limitation Petitioners, Smithland Towing & Construction LLC, as title owner, and WRBM, LLC d/b/a Western Rivers Boat Management, Inc., as operator and owner pro hac vice of the WILLIAM E. STRAIT, have responded, (Lim. Pet. Resp.), Dkt. 180. Hutco has also responded, (Hutco Resp.), Dkt. 181. So have the state court claimants, (State Claimants Resp.), Dkt. 182.[1] Stewart has replied, (Reply), Dkt. 183.

As such, briefing is complete and this motion is ripe for adjudication. For the reasons that follow, Alice Stewart's Mot. to Lift Stay, Dkt. 176, is **DENIED**.

**I.   FACTUAL BACKGROUND**

The WILLIAM E. STRAIT was a steel inland river towboat owned and operated by Smithland Towing & Construction, LLC and WRBM, LLC. *See* Compl., Dkt. 1, ¶ 5. On

---

[1] Stewart argues that the Court should only consider the Limitation Petitioners' response because "[o]nly WRBM has standing to oppose this Motion." Reply at 1. By that, Stewart means that Hutco, Quentin Stewart's employer, "has not been sued by Stewart" and the "state court plaintiffs have no standing because they filed suit in state court." *Id.* However, contrary to Stewart's claim that neither Hutco nor the state claimants can show prejudice, lifting the stay could impact the state court trials and thereby prejudice either Hutco or the state claimants. For instance, lifting the stay could result in inconsistent findings and create duplicative work. The Court therefore considers both Hutco's and the state claimants' responses.

1

December 14, 2015, the WILLIAM E. STRAIT was proceeding southbound on the Mississippi River when it was involved in a collision and sank. *See id.* ¶ 8. After this incident, the First Marine Shipyard took possession of the boat and began rebuilding it. *See id.* ¶ 10. On January 19, 2018, a fatal explosion occurred at First Marine Shipyard during the rebuilding process. *See id.* ¶¶ 10–11. Quentin Stewart, a welder working on the ship, was one of those individuals who was killed in the explosion. *See* Mot. to Lift. Quentin's widow, Alice Stewart, was appointed Administratrix of Quentin's estate. *See id.*

On July 24, 2018, Limitation Petitioners filed the current action seeking exoneration from or limitation of liability in connection with the explosion pursuant to the Limitation of Liability Act. *See* Compl. On October 3, 2019, the Court stayed proceedings within the Limitation Act and coordinated discovery with the several state court cases filed in Marshall Circuit Court. *See* Mem. Op., Dkt. 172. Alice Stewart now asks the Court to lift that stay. *See* Mot. to Lift Stay.

## II.   DISCUSSION

District courts have jurisdiction over actions arising under the Limitation Act, and they have "discretion to stay or dismiss Limitation Act proceedings to allow a suitor to pursue his claims in state court." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 454 (2001). Although a district court's "decision is 'one of discretion in every case,' " *id.* at 449 (quoting *Langes v. Green*, 282 U.S. 531, 544 (1931)), the Supreme Court and the Sixth Circuit have determined that there are two situations in which a district court is required to dissolve its stay and permit claimants to litigate their claims in a forum of their choice. *See id.* at 442; *see also S & E Shipping Corp. v. Chesapeake & O. Ry. Co.*, 678 F.2d 636, 643 (6th Cir. 1982). Those two situations are: (1) when a single claim is involved, and (2) when the aggregated claims total less than the limitation fund. *See ibid.*. This case does not involve either of those situations, at least

not at this time. There are multiple claimants, and the aggregate of all the claims does not necessarily total less than the limitation fund. Therefore, the decision to lift the stay is within the Court's discretion. *See ibid.* What animates this decision is whether the Court is satisfied that the vessel owner's right to seek limitation will be protected. *See Lewis*, 531 U.S. at 454

The Court previously concluded that "staying the current proceeding will still afford Limitation Petitioners the necessary protections under [the Limitation Act]." Mem Op. at 3–4. In that decision, the Court concluded that Stewart would not be prejudiced by staying this proceeding, as she would be able to conduct any additional discovery needed "when or if this proceeding continues *after the conclusion of the state litigation*." *Id.* at 4 (emphasis added).

Stewart provides three reasons as to why the Court should now lift the stay. First, Stewart argues that the Court should lift the stay because of the "long delay" until the state trials take place—the state trials are scheduled to begin in the spring of 2023. *See* Mot. to Lift Stay. However, the usual hardships that go along with waiting for a trial do not give rise to the type of prejudice that would merit lifting this stay. Stewart has not explained why waiting for the conclusion of state trials would create any type of undue prejudice. *See* Mot. to Lift Stay.

Second, Stewart claims that there is a question as to the applicability of the Limitation Act to these cases because the Court has not determined whether the WILLIAM E. STRAIT is a "vessel" under the terms of the statute. *See* Reply at 2. Thus, Stewart believes that the Court should try her case first. *See id.* However, judicial economy suggests that the stay should remain in effect. Once all of the state cases are concluded, the parties will know whether the aggregated claims total more than the limitation fund and therefore whether it will be necessary for the Court to rule on the Limitation Petitioners' claim to limit their liability to the value of the fund. *See* Lim. Pet. Resp. at 5–6. Furthermore, it appears, as the state claimants note, that "the

3

customs and practices that have been adopted and followed are working well for the benefit of all of the parties," and creating "a federal tract and a state tract" would "significantly disrupt" the state proceedings. State Claimants Resp. at 2–3. This is especially true because it appears that discovery in the state litigation is still ongoing. *See* Hutco Resp. at 2. After coordinating discovery efforts, it makes little sense to reverse course now.

Third, Stewart contends that "extensive discovery has already been completed," which the Court can take judicial notice of. That may be so. But there are still unresolved issues that the state court proceedings can resolve, e.g., whether the aggregated claims total more than the limitation fund. And as discussed *supra*, it appears that discovery in the state litigation is still ongoing. *See id.*

The Court therefore finds that the stay should remain in place. The Court originally contemplated that this stay would remain in place until the state litigation concluded, and Stewart has not provided any new information that warrants lifting that stay now.

Additionally, as part of her motion to lift the stay, Stewart requests a status conference in order to prepare a scheduling order and a trial date. *See* Mot. to Lift Stay. However, because the motion to lift stay is denied, a status conference is not needed at this time.

### III.    CONCLUSION

For the above stated reasons, **IT IS HEREBY ORDERED** that Alice Stewart's Mot. to Lift Stay, Dkt. 176, is **DENIED**.

**IT IS SO ORDERED**

**Thomas B. Russell, Senior Judge**
**United States District Court**
March 23, 2022