UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**In re**
**Smithland Towing & Construction LLC,**
**as Title Owner, and WRBM d/b/a Western**
**Rivers Boat Management, Inc. as Operator**
**and Owner pro hac vice of the William E.**
**Strait, no. 2070550, for exoneration**
**from or limitation of liability**

No. 5:18-cv-113-BJB

\* \* \* \* \*

### OPINION & ORDER

Alice Stewart, widowed by a shipyard explosion, has filed a motion for judicial approval of her settlement with Hutco Services, Inc., her husband's employer. Although many claims run between many parties in this limitation-of-liability action, a claim by Stewart directly against Hutco apparently isn't among them.[1] Nor is any claim by her two minor children, whom the Hutco settlement would also bind. DN 215. Given her guardianship of those two minors, Stewart confidently asserts that "Kentucky law requires the approval of the settlement by this court," pointing to KRS § 387.125(6). *Id*. at 2. That provision states: "Subject to the approval of the court in which the action, claim, or proceeding has been filed, a guardian may settle or compromise the action, claim, or proceeding on behalf of the ward." But the Court is not nearly as confident that this Kentucky procedural rule applies in a federal admiralty case. And even if that provision does apply, it is hardly clear that KRS § 387.125(6) requires judicial approval of a settlement between parties that aren't formally adverse before this Court.

---

[1] Smithland Towing & Construction LLC and WRBM LLC filed this lawsuit after a towboat owned by Smithland Towing and operated by WRBM—the WILLIAM E. STRAIT—exploded on January 19, 2018, while being rebuilt at the First Marine Shipyard. Complaint (DN 1) ¶ 10. Alice Stewart is the widow of Quentin Stewart, a worker killed by the explosion. *See* Answer, Claim, and Third-Party Complaint (DN 19) at 5. Stewart answered the limitation complaint, asserted a claim under Kentucky's wrongful-death statute against Smithland Towing and WRBM, and (in the same document) filed a third-party complaint against First Marine Shipyard, Joe Rupcke, Four Rivers Marine Coating, and Thermal Control and Fabricating LLC. That claim asserted diversity jurisdiction and alleged that these parties negligently caused Quentin Stewart's death. *Id*. at 1, 4, 9. Billy Koonce, another worker who was injured in the explosion, and Rosemary Wright, whose husband was also killed by the explosion, filed third-party complaints against Hutco—asserting that it negligently caused the explosion. *Id*. at 4; DNs 26, 27.

1

Stewart's motion raises at least three tricky questions: jurisdiction, statutory interpretation, and justiciability.

**A.** To start, what is the basis for the Court's jurisdiction? The limitation complaint, filed by Smithland Towing & Construction LLC, invoked the Court's admiralty jurisdiction. *See* DN 1 ("Jurisdiction in this [limitation] action exists pursuant to admiralty and maritime jurisdiction of the United States Courts, 28 U.S.C. § 1333[.]"). Stewart's third-party complaint invoked diversity jurisdiction, and pled admiralty jurisdiction in the alternative. Third-Party Complaint (DN 19) ¶ 1 ("Jurisdiction of this court, with regard to third party claims, is based on 28 U.S.C.A. § 1332, diversity of citizenship …. In the alternative, Alice Stewart asserts maritime jurisdiction against these third party defendants pursuant to 28 U.S.C.A. § 1333.").

The basis for jurisdiction—admiralty or diversity—matters for at least two reasons.

*First*, it bears on the question whether state law (like KRS § 387.125(6)) applies. In diversity cases, substantive state law and federal procedural law apply under the *Erie* doctrine. *See generally Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).[2] Federal courts that have considered the question have held that "judicial approval of settlements involving minors [is] a matter of substantive state law." *Goesel v. Boley Int'l (H.K.) Ltd.*, 806 F.3d 414, 419 (7th Cir. 2015) (collecting cases). So if the Court is sitting in diversity, state law appears to apply, meaning the judicial-approval statute is at least potentially before the Court.

In admiralty cases, however, deciding whose law applies is more complex.[3] "The exercise of admiralty jurisdiction … does not result in automatic displacement

---

[2] "Stated in general terms, *Erie*'s core doctrine is that the substantive law to be applied in any federal case is state law, except when the matter before the court is governed by the United States Constitution, an Act of Congress, a treaty, international law, the domestic law of another country, or federal common law." WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 4501 (3d ed. 2023).

[3] One of the problems with the lack of adversarial briefing here is that the content of the "federal" rule that would apply outside a typical *Erie* situation isn't entirely clear. The parties haven't pointed to a rule authorizing minor settlements *without* judicial approval in admiralty. On the other hand, neither is the Court aware of an admiralty rule similar to Kentucky's *requiring* judicial approval of minor settlements. And it may well be that if admiralty does apply, the substantive rule of decision doesn't even change because federal law, though formally applicable, would simply absorb the state rule on point. *See generally* 1 ADMIRALTY & MARITIME LAW § 4:4 (6th ed. 2023) ("[S]ince the body of federal maritime statutes and judicially created general maritime law is not a complete system, judges in admiralty cases frequently adopt state law rules through a process of 'borrowing,' thereby incorporating state law doctrines into the general maritime law."); *cf. Great Lakes Ins. Co v. Raiders Retreat LLC*, 143 S. Ct. 999 (2023) (granting certiorari to decide whether a rule of federal common law governs the enforceability of maritime contracts' choice-of-law provisions that displace state conflict-of-law laws).

2

of state law." *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 206 (1996). Determining whether state law applies "is one of the most perplexing issues in the law." 1 ADMIRALTY & MARITIME LAW § 4:4 (6th ed. 2023); *see also* Wright & Miller, § 3671.3 ("[T]he comparatively small role that state law plays within the realm of admiralty is somewhat puzzling[.]"). Furthermore, whether and to what extent this inquiry preempts, absorbs, or displaces the typical *Erie* inquiry remains unclear. Some commentators have recognized, with confidence rivaling Stewart's, that "the *Erie* doctrine applies, whatever the ground for federal jurisdiction, to any issue or claim which has its source in state law." Wright & Miller, § 4520 (quoting *Maternally Yours v. Your Maternity Shop*, 243 F.2d 538, 540 n.1 (2d Cir. 1956)). This would appear to reach "an action in admiralty under the wrongful-death statute of a state," such that "the substantive law of the state is applicable." 2 AM. JUR. 2d ADMIRALTY § 107. Elsewhere, however, the same authorities equivocate: In "admiralty and maritime matters" and other areas where "there is a strong national or federal concern originating from the Constitution," "an *Erie* analysis is unnecessary…." WRIGHT & MILLER § 4514.

*Second*, the basis for jurisdiction sets the framework for deciding *which* state's law applies. "A federal court sitting in admiralty must apply federal choice of law rules." *State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 414 (2d Cir. 1990). A federal court sitting in diversity, in contrast, applies the choice-of-law rules of the state in which it sits (in this case, Kentucky). *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). Presumably one (or both) of these choice-of-law rules could direct the Court to apply the law of Louisiana (where Stewart and her minor children appear to live) rather than the law of Kentucky (where the accident underlying the limitation action occurred).

Perhaps out of solicitude for the Court's approval, or perhaps out of neglect, Stewart gives no attention to these difficult questions.

**B.** Even assuming KRS § 387.125(6) applies in federal court, it's not clear that *this* Court must approve the settlement. The statute provides:

> "A guardian may institute or defend actions, claims, or proceedings in any jurisdiction for the protection of the ward's estate. Subject to the approval of the court in which the action, claim, or proceeding has been filed, a guardian may settle or compromise the action, claim, or proceeding on behalf of the ward. If the action, claim, or proceeding has not been filed in any court, the District Court of the county where a guardian qualified shall approve the settlement or compromise."[4]

---

[4] Federal courts apparently haven't given much attention to KRS § 387.125(6), perhaps because parties rarely ask them to weigh in on issues related to guardianship. Kentucky courts haven't considered the statute in any great depth, either. Though one Justice of the Kentucky Supreme Court stated in a dissent that it *does* apply in situations like this, in which the parties to the settlement aren't (yet) litigating before the court: "Whether settled prior to a formal complaint for damages is filed or after, KRS § 387.125(6) requires that any

Has an action been "filed" in this Court "on behalf of the ward" or "for the protection of the ward's estate"? That question of state statutory interpretation is no less murky than the jurisdictional issues surveyed above. The text of § 387.125 speaks to two types of settlements requiring approval: an "action, claim, or proceeding" that *already* "has been filed," and one in which "the action, claim, or proceeding has not been filed in any court." If a claim is pending, the court adjudicating it is the one that must review. If a claim is not pending in any court, then "the District Court of the count where a guardian qualified" is the relevant tribunal.[5]

The papers don't indicate that Stewart has filed a claim on behalf of the minors in this jurisdiction. Stewart filed her answer, claim, and third-party complaint as "administratrix of the Succession of Quentin Stewart," the deceased father. DN 19 at 1. She did not sue as the guardian or representative of the children. Nor did she sue Hutco, which apparently isn't adverse to Stewart in any claim in this lawsuit: Stewart's answer, claim, and third-party complaint do not assert any claim or defense against Hutco. Rather, Hutco is (or rather was, given a subsequent notice of settlement) fighting with other parties over who is liable for the explosion. It asserted a claim against Smithland Towing in the limitation action, *see* DN 54, and is a third-party claimant and defendant with respect to claims filed by other limitation claimants, *see, e.g.*, DNs 26, 27.[6] So this does not appear to be a "court in which the action, claim, or proceeding has been filed … on behalf of the ward." § 387.125(6).

True, Stewart brought this *motion* on behalf of the children. But the statute appears to divert such a motion either to the court in which claims have already been filed or to the court that qualified the guardianship. This Court is neither.

---

settlement for claims be approved by the court." *Coons ex rel. Coons v. McDonald-Burkman*, 2020-SC-506, 2021 WL 5050761, at *6 (Ky. S. Ct. Oct. 28, 2021); *see also Lawson ex rel. Lawson v. Dawson*, No. 2003-CA-448-MR, 2004 WL 1909357, at *4 (Ky. Ct. App. Aug. 27, 2004) ("KRS § 387.125(6) allows a duly appointed guardian to compromise and release a claim on behalf of a minor with court approval.") Neither opinion, however, confronts a case in the same posture as this one. And neither offers any limiting principle for a rule that would in theory require judicial pre-approval of *any* contract made on behalf of a minor, at least so long as it surrendered some potential cause of action.

[5] Stewart does not explain what or where is "the county where a guardian qualified." But the 27th Judicial District Court for the Parish of St. Landry, Louisiana, is the court that appointed her the guardian of her children. DN 215 at 2 n.3. That is also where she resides. DN 19 at 1.

[6] Hutco, First Marine, Smithland Towing, and WRBM recently filed a notice of settlement, explaining that they have "agreed between themselves to jointly contribute funds to settle the claims of the claimants herein, and … to waive, release and dismiss all claims and cross-claims" asserted against each other. DN 221 at 1. But Wright's claim and Koonce's claim against Hutco appear to remain pending.

**C.** It's not even clear that a case or controversy within the meaning of Article III exists between the non-party minors and the non-adverse Hutco. If parties reach an agreement before ever joining in federal litigation, why would a federal judge need (or be allowed) to sign off on what is, in effect, a purely private contract? After all, federal courts "lack jurisdiction to exercise judicial power when it would have no real consequences for the parties and would only rubberstamp an agreement the parties memorialized in writing and consummated before ever arriving on a federal court's doorstep." *NLRB v. Constellium Rolled Products Ravenswood, LLC*, 43 F.4th 395, 398 (4th Cir. 2022). "[O]nce the parties reach agreement, would the underlying disputes even qualify as 'Cases' and 'Controversies' as used by the framers of Article III?" *Lexington Ins. Co. v. Ambassador Group, LLC*, 581 F. Supp. 3d 863, 866 (W.D. Ky. 2021).

Importantly, this point wouldn't necessarily undermine the authority of a state court—say, "the District Court of the county where a guardian qualified"—to approve a settlement. Article III doesn't limit their jurisdiction as it does this court's. *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989) ("[T]he constraints of Article III do not apply to state courts."). Federal jurisdiction, however, is assumed *not* to exist. It must be affirmatively established by the party invoking the Court's authority based on the parties and claims before the Court. *See Global Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co., Ltd.*, 807 F.3d 806, 810 (6th Cir. 2015) ("[T]he party invoking federal jurisdiction has the burden to prove that jurisdiction.").

In some limited circumstances, to be sure, federal courts exercise Article III authority to formally bless the resolution of existing claims. *See, e.g., Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381 (1994) (acknowledging that "the terms of [a] settlement agreement" may be "made part of the order of dismissal"). But the soundness of even those limited exertions of "ancillary jurisdiction" are not without controversy. *Compare* Michael T. Morley, *Non-Contentious Jurisdiction and Consent Decrees,* 19 U. PA. J. CONST. L. ONLINE 1, 3 (2016) (questioning federal jurisdiction when "all interested parties affirmatively agree and seek the same relief."), *with* James E. Pfander & Daniel D. Birk, *Article III Judicial Power, the Adverse-Party Requirement, and Non-Contentious Jurisdiction*, 124 YALE L.J. 1346, 1355 (2015) (questioning strict adverseness requirement given historical examples of "non-contentious jurisdiction"). Regardless, this settlement doesn't appear to resolve any claims pending before this Court. And because the minors are not parties, any "inherent authority" to approve settlements involving minor parties wouldn't appear to apply. *See Egan ex rel. Keith v. Jackson*, 855 F. Supp. 765, 775 (E.D. Pa. 1994) (discussing "the Court's inherent duty to protect the interests of minors and incompetents that come before it."); *see also* Alexandra N. Rothman, *Bringing an End to the Trend: Cutting Judicial "Approval" and "Rejection" out of Non-Class Mass Settlement*, 80 FORDHAM L. REV. 319, 332 (2011) (discussing judicial approval of settlements involving minors).

\* \* \*

To be clear, if the statute did control and if the dispute were properly before this Court, no factual or legal reasons would appear to call into question the appropriateness or lawfulness of the settlement between Hutco and Stewart's minor children. That observation, however, carries the significant caveat that Stewart's motion does not attach the settlement agreement, but instead a document that identifies only the total settlement amount and proposed allocation. That information remains under seal, but appears to be consistent with KRS § 411.130(2)(b). So while the limited information before the Court gives it no substantive pause regarding the settlement submitted for approval, the parties haven't established the basis for the Court to exercise jurisdiction over that settlement. Or, for that matter, that this Court's approval is even necessary for the children and widow to settle with Hutco and move on from this lawsuit. On that basis, the Court denies Stewart's motion without prejudice.

Benjamin Beaton, District Judge
United States District Court

December 29, 2023